**FILED**

FEB 2 5 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Ricky Bryant #00113-000
        Plaintiff    USP
                     POB 1000
    V.               Lewisburg, PA 17837

Edward F. Reilly, Jr.
        Chairman

Isaac Fulwodd, Jr.
        Commissioner

Cranston Mitchell
        Comissioner

Deborah A. Spagnoli
        Commissioner

Patricia K. Cushwa
        Commissioner

United States Parole Commission
5550 Friendship Blvd., Suite 420
Chevy Chase, MD 20815-7286
        Defendants.

Case: 1:08-cv-00315
Assigned To : Huvelle, Ellen S.
Assign. Date : 2/25/2008
Description: Pro Se General Civil

## COMPLAINT

This is a civil action brought by an inmate convicted of violating the laws of the District of Columbia Code ("D.C. Code") who is confined in a federal institution at USP Lewisburg, PA. Defendants are the Chairman and/or Commisioners of the United States Parole Commission ("the Commission") and, as such, they, their predecessors, or their designees are and were responsible for considering and acting upon plaintiff's request for parole. Plaintiff has been, and continues to be, subjected to various inhurious acts by the Defendants, who have repeatedly and improperly dnied Plaintiff's request for parole. Plaintiff seeks declaratory and injunctive relief.

**RECEIVED**

FEB 1 1 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## Jurisdiction

1.    Plaintiff seeks to vindicate rights protected by the Ex Post Facto Clause of Article 1, Section 9 of the United States Constitution, the Fifth and Fourteenth Amendments to the United States Consitution, and federal law.  This Court has jurisdiction over Plaintiff's claim pursuant to 28 U.S.C. Sections 1331 and 1343 (a)(3), (a)(4), (b)(1), and 42 U.S.C. section 1983.

2.    The Court has authority to grant declaratoty relief pursuant to 28 U.S.C. Sections 2201 and 2202.

3.    This Court has jurisdiction to ceclare the rights of the parties and to grant all futher relief found necessary and proper.

4.    Venue id appropriate in this Court pursuant to 28 U.S.C. Section 1391(b).

### Parties

5.    Plaintiff Ricky Bryant is confined at USP Lewisburg, pursuant to a sentence imposed by the Superior Court of the District of Columbia on April 7, 1980.

6. Defendant Edward F. Reilly, Jr. is the current Chairmanof the Commission.

7.    Defendant Patricia K. Cushwa is a current Commissioer of the Commission.

8.    Defendant Isaac Fulwood, Jr. is a current Commissioner of the Commission.

9.    Defendan **Cranston Mitchell is a current Commissioner** of the Commission.

2

10.  Defendant Deborah Spagnoli is a current Commissioner of the Commission.

11.  Defendants, as the Chairman and/or Commissioners of the Commission, were and are responsible for reviewing and acting upon Plaintiff's request for parole in accordance with the United States Constitution and federal law and regulations.

### Introduction

12.  Plaintiff is serving a sentence imposed by the Superior Court for the District of Columbia for various violations of the District of Columbia Code.  At the time Plaintiff committed the crimes for which he was convicted and was sentenced, authority for parole decisions for D.C. Code violators was vested in the D.C. Parolr Board (the "Parole Board").

13.  On August 5, 1997, Congress anacted the National Capital Revitalization and Self-Government Improvement Act (the "Revitalization Act"), Pub. L. No. 105-33, Section 11231, 111 Stat. 712 (1997).

14.  The Revitalization Act abolished the Parole Board, see Pub. L. 105-33, Section 11231 (b), and directed the Defendants, as the Chairman and Commissioners of the Commission, to conduct parole hearings for D.C. Code prisoners "pursuant to the parole laws and regulations of the District of Columbia," id. Section 11231(c).

15.  On August 5, 1998 defendants assumed the responsibility for making parole decisions and release decisions for all eligible D.C. Code felons, pursuant to the Revitalization Act.

3

16.   In 2000, despite the requirements of the Revitalization Act that the defendants apply the parole statutes, regulations, guidelines, and practices of the Parole Board, the Defendants published new parole rules, regulations, and guidelines that they deemed applicable to any D.C. COde inmate receiving an initial parole hearing after August 5, 1998 (the "2000 Guidelines"). See 28 C.F.R. Section 2.80 (a)(5).

17.   For inmates who had an initial parole hearing prior to August 5, 1998, the Defendants chose to apply the Parole Board Guidelines. See 28 C.F.R. Section 2.80 (a)(4). For all other inmates, some vaiation of the Defendant's 2000 Guideline apply. See id. Section 2.80 (a)(1) and (5).

I.                   **Regulatory Frame work for Parole
                    Decisions for D.C. Code Inmates
                    at the Time of the Plaintiff's
                    Conviction and Sentencing**

18.   Prior to 1998, at the time Plaintiff committed the crimes for which he is incarcerated, and at the time he was sentenced, the Parole Board administered parole proceedings for D.C. Code violators in the custody of the District of Columbia.

19.   Prior to 1998, where D.C. Code offenders were in the custody of the United States Government, the Commission administered their parole hearings, but in such circumstances, the Commission was required to apply the Parole Board's regulations, guidelines, policies, and practices, found by this Court to have force/effect of law.

20.   Under the Parole Board statutes, regulations, guidelines, policies, and practices, the "minimum sentence" for a crime, i.e., the period that an inmate must serve before he or she is eligible for parole, satisfied the inmate's accountability for the offense of conviction.

4

21.   In conducting parole hearings and making parole determinations, the Parole Board applied mandatory guidelines, many of which were codified as minicipal regulations, that carefully prescribed the method and crireria that the Parolr Board used to render decisions on parole requests.  As its guide for dtermining whether an incarcerated individual would be paroled or re-paroled, the Parole Board used the criteria set forth in the guidelines.

22.   At the time that the Plaintiff committed his crimes, the Parole Board made decisions for D.C. Code offenders using guide-lines that it formally adopted in 1985, and published in the D.C. Municipal Regulations in 1987 (the "1987 Guidelines").

23.   In 1991, to ensure consistent and equitable application of the 1987 Guidelines and other parole regulations the Parole Board adopted a Policy Guideline defining terms used in the 1987 Guidelines (the "1991 Policy Guideline").  The 1991 Policy Guideline applied to all requests for parole heard by the Parole Board.

24.   The 1987 Guidelines required the Parole Board to calculate a Salient Factor Score ("SFS") for each prisoner.  Based on a parole applicant's SFS, the Parole Board then calculated a "total point score", using pre- and post incarceration factors, on which it based it's decsion to either grant or deny parole.  In unusual circumshances," when mitigating and/or contrvaoling factors applied, the Parole Board could depart from an action (to grant or to deny parole) otherwise indicated by an inmate's total point score.

25.   In the case of an initial parole hearing, the 1987 Guidelines sate that:

> After determining an adult parole candidate's SFS score and applying the pre and post factors to arrive at a toatl point score pursuant to Section 204 and Appendix 2-1, the Board shall take one (1) of the following actions:
>
> (a) IF POINTS=0; Parole shall be granted at initial hearing with low level of supervision required;

5

        (b) IF POINTS=1:  Parole shall be granted at
                            initial hearing with high
                            level of supervision required;

        (c) IF POINTS=2:  Parole shall be granted at
                            initial hearing with highest
                            level of supervision required; or

        (d) IF POINTS=3-5:Parole shall be denied at
                            initial hearing and rehearing
                            scheduled.

26.   In the case of a parole rehearing, the 1987 Guidelines state that:

        In determining to release on parole an adult or
        a youth offender appearing before the Board
        at a parole hearing, the Board shall take the
        total point score from the initial hearing and
        adjust that score according to the institutional
        record of the candidate since the last hearing
        pursuant to Appendix 2-2.  The Board shall then
        take one of the following actions:

        (a) IF POINTS=0-3: Parole shall be granted at
                            this rehearing with the
                            highest level o[f] super-
                            vision required; or
        (b) IF POINTS=4-5: Parole shall be denied and
                            a rehearing date scheduled.

27.   The manner in which the "institutional record of the candidate"
is used to adjust the points score and to define the types of
conduct via the 1991 Policy Guidelines relative to institutional
disciplinary actions that would qulify as negative institutional
behavior, as defined in Section VI.A.1 of the 1991 Policy Guideline:

      1.  **Negative Institutional Behavior** consists of serious or
      repeated major disciplinary infractions as described below
      that are sanctioned under Department of Corrections due
      process procedures:

        a.   In INITIAL PAROLE CONSIDERATION cases, the following
        disciplinary infractions shall ordinarily be considered
        as negative institutional behavior:

        (1)  One Class 1 Offense for murder, manslaughter,
        kidnapping, armed robbery or first degree burglary
        at any time during the minimum sentence(see DCMR

28-502.3, Mat 1987);OR

(2)    One Class One Offense...during the 12
months preceding the hearing OR during the last half
of the minimum sentence up to a period of three
years, whichever is longer; OR

(3)    Two Class II Offenses...during the 12 months
preceding the hearing OR during the last half of the
minimum sentence up to a period of three years.
whichever is longer.

28.  Pursuant to Appendices 2-1 and 2-2, in parole hearings,
one point can be subtracted from an inmate's total point score for
"program achievement" (referred to in the Policy Guidelines (1991),
as "sustained program or work assignment achievement").

29.  Section VI(A)(2)(a) of the 1991 Policy Guideline define
"sustained program or work assignment achievement" for purposes of
Appendix 2-1 as:

In INITIAL PAROLE CONSIDERATION cases, the following
accomplishments shall ordinarily be considered as sustained
progam or work assignment achievement during the period of
incarceration:

(1)Successful completion of one or two educational or
vocational programs, or program levels, each of which
enabled the offender to develop an academic or job-
related skill, OR enabled the offender to progress to
a higher level of difficulty or skill in the program
area.

30.  As noted, the Parole Board could depart from the result
dictated by sections 204.19 and 204.21 only in "unusual circumstances,"
and when followed by particular procedures:

Any parole release decision falling outside the numerically
determined guideline should be explained by reference to the specific
aggravating or mitigating factors as stated in Appendices 2-1 and
2-2.  Section 204.22 of the District of Columbia Municipal Regula-
tions provides that:

The Board may, in unusual circumstances, waive the
SFS and pre and post incarceration factors [which
comprise the total point score] set forth in this
chapter to grant or deny parole to a parole candidate.
In that case, the Board shall specify in writing those
factors which it used to depart from the strict appli-
cation of the provisions of this chapter.

7

31.  In the 1991 Policy Guideline, the Parole Board further defined the score of its authrity to deny parole for "unusual circumstances" when a point score indicates that parole should be granted.  Section VII|C) of the 1991 Policy Guideline, titled "FACTORS COUNTERVAILING A RECOMMENDATION TO GRANT PAROLE," lists and defines the following to constitute "unusual circumstances" countervailing a grant of parole:

    a.  Repeated Failure Under Parole Supervision;

    b.  Ongoing Criminal Behavior;

    c.  Lengthly History of Criminally Related Alcohol abuse;

    d.  History of Repetitive Sophisticated Criminal Behavior;

    e.  Unusually Extensive or Serious Prior Record;

    f.  Instant Offense Invlved Unusual Cruelty to Victims, which applied where the offense involved physical, mental, or emotional abuse beyond the degree needed to sustain a conviction on the instant offense or especially vulnerable victims such as children or elderly persons; and

    g.  Repeated or Extremely Serious Negative Institutional Behavior.

32.  The Parole Board defined these "unusual circumstances" in the 1991 Policy Guideline and established objective criteria to determine their applicability.

II.        The Parole Regulations Used By Defendants.

33.  As noted above, the Revitalization Act abolished the Parole Board and directed the Commission to conduct parole hearings for District of Columbia offenders according to the parole statutes regulations, guidelines, policies and practices of the District of Columbia.

34.  After the Commission resumed responsibility for parole hearings for District of Columbia offenders the Commission adopted the 2000 Guidelines and determined that those guidelines would apply to any D.C. Code offender that had not received an initial parole hearing as of August 5, 1998.

35.  Unlike the Parole Board statutes, regulations, practices, guidelines, the Commission's 2000 Guidelines and parole eligibility

criteria do not consider the completion of a prisoner's "minimum sentence" as satisfying offense accountability.  Instaed, the Commission and its designees have repeatedly denied D.C. inmates requests for parole, including those of plaintiff, on the grounds that they believe that the offender has not served enough time for their offenses, i'e', that the inmate has not been incarcerated long enough to satisfy the accontability for their offense(s).

   A.  Parole Eligibility

   36.  To accoun for the nature and circumstances of parole applicants' offenses, and the history and characteristics of the prisoners, the 2000 Guidelines contain instructions for the rating of certain offenses.  Chapter 1 through 12, Section 2.20 of the Commission Rules and Procedures comprise the Commission's offense severity index.

   37.  Like the 1987 Guidelines, the 2000 Guidelines require the commission to determine a Salient Factor Score ("SFS") for each parole applicant, which is based upon factors such as prior convictions/adjudications, prior commitments of more than 30 days, age at the commencement of the current offense,/prior commitments, recent commitment-free period, probation/parole/confinement/escape status at the time of the current offense, and the age of the offender.  The Commission guidelines, however, also allow the Commission [to] take into account any substantial information available to it in establishing the prisoner's offense severity rating, salient factor score, and aggravating or mitigating cir-cumstances, provided the prisoner is apprised of the information and afforded an opportunity to respond." Under the Commission guide-lines, the SFS becomes a part of a Base Point Score ("BPS"‖ which is comprised of the categories in which points are assigned according to the following factors"

            Category 1- Risk of Recidivism(Based on the Salient
                        Factor Score)
            Category 2- Current or Prior Violence
            Category 3- Death of a Victim or High Level of
                        Violence

(Althogh the Parole Board guidelines also require the formulation

9

of an SFS for parole applicants, the Parole Board used the SFS only
to determine the risk of recidivism on the part of the applicants,
and did not use the SFS as the basis for an increase in the
period of imprisonment the inmate had to serve to demonstrate
parole suitability.)

      38.  The Commission's method of determining parole eli-
gibility is to apply the BPS(the combination of points assigned
from Category I-III) to the appropriate category of offense behavior,
then to add the corresponding number of months to a parole appli-
cants' minimum sentence(the number of months an inmate must serve
before becoming eligible for parole), based on  the offense severity
index.  The months added to the parole applicant's minimum sentence
based on the BPS are considered to be the "Base Guideline Range",
and are used by the Commission and its designees to determine hte
additional months of imprisonment that the inmate must serve above
the months that the Parole Board required for parole eligibility.

               1. Program Achievement

      39.  Pursuant to section 2.80||e)(1) of the Commission's
guidelines, the Commission "shall assess whether the prisoner has
demonstrated ordinary or superior in the area of prison programs,
industries, or work assignments while under confinement for the
current offense. "Under this structure, the Commission has sole
discretion of determining whether the parole applicant's work and
program achievements are to be considered "superior or ordinary".
Per the Commissions guidelines, "if superior achievement is found,
the award for superior program achievement shall be one-third of
the number of months during which the prisoner demonstrated superior
program achievement." (The Parole Board guidelines, on the other
hand, use an objectivestandard to reward "sustained or work Assign-
ment achievement", and an award is granted even for what the
Commission might consider "ordinary" achievement.|'

              2. Institutional Behavior

      40.  The Commission guidelines, like those of the Parole

Board, take into account an inmate's institutional record/behavior
for the purposes of parole determinations.  Unlike the Parole Board's
guidelines, the 2000 Guidelines determine a range of months that the
Commission adds to an inmate's minimum sentence under the provisions
of 28 C.F.R.§2.36 "for any significant disciplinary infractions
since the beginning of confinement on the current offense, in the
case of an initial hearing, and since the last hearing in the case
of an rehearing." 28 C.F.R. §2.80(j).

     41.  Unlike the Parole Board's guidelines, 28 C.F.R. §
2.80(j) and2.36 do not limit consideration at initial hearings  fof
parole to within three years prior to the initial parolr hearing.

    B.  Determining Whether To Grant Parole

     42.  The "Total Guideline Range" (the ultimate deter-
mination of time to be served to establish presumptive suitability
for parole pursuant to the Commission's guideline structure) is
reached by adding: "the minmum of the base point guideline range,
the range for disciplinary infractions, the number of months requred
by the prisoner's eligibility date, if applicable, then subtract
the award for superior program achievement if applicable."

     43.  After calculating an inmate's Total Guideline Range
under the 2000 Guidelines, the Commission "may, in unusual circum-
stances, grant or deny parole to a prisoner notwithstanding the
guidelines." 28 C.F.R. §2.80 (n).

     44.  28 C.F.R. §2.80(n) defines "unusual circumstances"
for the purposes of the 2000 Guidelines and provides examples similar
to those applied by the Parole Board, but without the definitions
of such unusual circumstances that the Parole Board adopted in the
1991 Policy Guideline to ensure consistency in the parole determi-
nations.

     45.  Pursuant to §2.80(a)(4) of the Commission's guide-
lines regarding D.C. Code offenders, the Commission's guidelines
apply to "all prisoners who are given an initial parole hearing
on or after August 5, 1998.  For those prisoners whose initial

11

hearings were held prior to August 5, 1998, the Commission shall render its decisions by reference to the guidelines, policies and practices in effect and applied by the D.C. Parole Board." Thus, regardless of the statutes, regulations, guidelines, policies, and practices in effect when an offender committed his or her crime and was sentenced, the offender's fitnessfor parole may hinge arbitrarily upon the date of his or her initial parole hearing.

III.  **Plaintiff Ricky Bryant's Parole Hearing**

  A.  Defendant's Use of the 2000 Guidelines

  46.  On April 7, 1980 and September 27, 1982 or thereabouts, the D.C. superior Court sentenced Plaintiff to consecutive terms of imprisonment: Docket #F5341-79DE(Robbery, Burgary I, 10 to 30 years) and Docket ‖F591-80BC‖Felony Murder, Armed Robbery, 20 years to Life), resulting in a parole eligibility after service 270, or June 30, 2002, but had initial hearing in June 2003.

  47.  Under the statutes, regulations, guidelines, policies, and practices of the Parole Board Plaintiff became eligible for parole 6-30-03, at which time the Defendants refused to give Plaintiff credit for his institutional programming.

  48.  When Plaintiff had his initial parole hearing in June 2003, Defendants or their predecessors assigned a hearing examiner, Kathleen A. Pinner, , to conduct Plaintiff's initial parole hearing.

  49.  Despite the fact that Plaintiff had been convicted and sentenced at a time when the Parole Board applied its 1987 Guidelines and other policies and practices to make parole determinations, Defendants or their predecessors instructed hearing examiner Pinner to use the Defendants 2000 Guidelines in evaluating Plaintiff's request for parole.

  50.  Under the Parole Board's statutes, regulations, guidelines, policies, and practices, Plaintiff became eligible for parole after he completed his "minimum sentence". Under the Parole Board's statutes, regulations, guidelines, policies, and practices, the "minimum sentence" represented the period that an inmate had to serve to satisfy the inmate's accountability for the offense.

12

51.  Under the 2000 Guidelines Plaintiff's salient factor at his initial hearing was 4 and his Base Score was 8.  Plaintiff's Base Score under the 2000 Guidelines increased his range of months to be served before becoming parole eligible, 270 months to 394 months, when under the Parole Board Guidelines Plaintiff was expected to serve 270 months to become eligible for parole. Plaintiff had served the 270 months required by the Parole Board to become eligible for parole.

52. At Plaintiff's initial hearing, despite having completed various institution programs and college courses, the Defendants and their designee refused to credit Plaintiff for his institutional programs, and gave Plaintiff a 60 month setoff; i.e., the period between a parole hearing and the next opportunity to request parole. The notice of action the defendants gave plaintiff indicated that their decision was not appealable.

53.  The Defendants stated reasons for denying Plaintiff parole was that his behavior in the institution constituted new criminal conduct in a prison facility, which is rated as Category Six Severity because it involved Arson in a Prison Facility. This requires 52-80 months, which is to be added to your base point score guideline range.

54.  Thus, under the defendants' decisions and guidelines, Plaintiff will be forced to serve at least 394 for a crime the courts sentenced him to imprisonment (subject to the Parole Board's deteminination that he could be paroled after 270 months when he satisfied his offense accountability) for twenty years/30 months (270months).

B.  Plaintiff's Rights Under The Parole Board's 1987 Guidelines.

55.  Had the Commission evaluated Plaintiff under the D.C. Parole Board's Guidelines, his SFS at his initial hearing would have been 5 and his total points score would have been 2, which would have included a -1 for his program achievement.

56.  Under the Parole Board's 1987 Guidelines, if the

grid point score equals two or less at an initial hearing, parole
should be granted unless the Parole Board finds that "unusual
circumstances" are present. See D.C.M.R.§§204.19, 204.22.

57. The Commission placed Plaintiff in the "unusual
circumstances" because of an Arson disciplinary report more than
eight years old, however, the disciplinary report is neither new
criminal conduct or defined as unusual circumstances under the
1991 Policy Guideline, and does not apply in Plaintiff's case.

**COUNT 1:** **THE DEFENDANTS VIOLATED THE EX POST FACTO CLAUSE OF
THE UNITED STATES CONSTITUTION**

58. Plaintiff repeats and re-alleges the allegations
set forth in paragraphs 1 through 57 as if fully set forth herein.

59. The retroactive application of a new law, resulting
in a significant risk of prolonging an inmate's sentence beyond
what would have resulted under the guidelines in effect when the
inmate was convicted, constitutes a violation of the Ex Post Facto
clause of the United States Constitution.

60. Prisoners are entitled to know the range of punish-
ments available at the time of sentencing, duiring the adjudication
of their case. The Ex Post Facto Clause assures that individuals
are given fair warning of what actions will be punished and the
degree to which they will be punished.

61. Under the 2000 Guidelines and their own interpretation
of the Parole Board's 1987 Guidelines and 1991 Policy Guideline,
the defendants, their predecessors, and/or their designees have
denied the Plaintiffs' request for parole and significantly
increased the risk Plaintiff's period of incarceration will be
prolonged and that he will serve longer than he would have had the
Parole Board's Guidelines, policies, and practices been applied.
Specifically, Defendants have significantly increased the risk that
Plaintiff will serve a longer period of incarceration than he
would have had the Parole Board's statutes, regulations, guidelines,

14

policies, and practices been applied correctly by:

      a.   increasing the period the Parole Board considered
         as satisfying offense accountability, i.e.,
         Plaintiff's parole eligibility date;

      b.   failing to give Plaintiff credit for program
         achievements pursuant to the Parole Board's
         Guidelines;

      c.   increasing Plaintiff's guideline range
         by considering disciplinary infractions that the
         Parole Board would have ignored; and

      d.   defining a disciplinary report as "new criminal
         conduct, when the 1991 Policy Guidelines do not
         support such action.

     62.  By ignoring the Parole Board's statutes, regulations,
guidelines, policies and practices, which consider the Plaintiff's
minimum sentence as satisfying offense accountability, the Defen-
dants have necessarily significantly increased the risk that the
Plaintiff will be incarcerated longer than he would have had the
Parole Board's statutes, policies, regulations, guidelines and
practices been applied.

     63.  Defendants have significantly increased Plaintiff's
risk of serving a longer period of incarceration by giving the
Plaintiff a sixty month setoff for factors not permitted under
the Parole Poard's 1991 Policy Guideline, which defines and
constraints the actions in parole decisions.

     64.  Similarly, Defendants have necessarily significantly
increased the risk that Plaintiff will be incarcerated longer by
failing to to award Plaintiff's credit for program achievement, if
Defendants felt that such programming did not rise to the level
of "superior programming", as opposed to the Parole Board's
standard of "sustained program achievement."

     65.  Finally, it cannot be disputed that Defendants have
significantly increased the risk that Plaintiff will serve a longer

period of incarceration than he would have had the Parole Board's Guidelines been applied by interpreting institutional infractions as "new criminal conduct" which would not have affected the Parole Board's consideration of Plaintiff's application in any way.

## COUNT II:   VIOLATION OF PLAINTIFF"S FIFTH AMENDMENT AND FOURTEENTH AMENDMENT DUE PROCESS RIGHTS

66.   Plaintiff repeat and re-alleges the allegations set forth in paragraphs 1 through 57 as fully set forth herein.

67.   Plaintiff has a constitutionally protected intrest in receiving credit for his program and work achievement as provided for under the 1987 Guidelines, the 1991 Policy Guideline and the Commission's own 2000 Guidelines.   Defendants have refuse to give Plaintiff credit for program achievement earned prior to his parole hearing.

68.   Further, the Defendants continue to apply improper self-imposed standards, rather that the guidelines established by the Parole Board, which held authority over Plaintiff who is a D.C. Code offender, was so at the time of his conviction and sentencing.

69.   As a result, Defendants have denied plaintiff his constitutional rights to a fair review process.

### RELIEF REQUESTED

Wherefore, Plaintiff respectfully request that this Court:

1.   require the Defendants to apply the Parole Board's statutes, regulations, policies, guidelines, and practices, including but not limited to the 1987 Guidelines and the 1991 Policy Guidelines, to Plaintiff's request for parole;

2.   deem that Plaintiff's serveice of his to his parole eligibility date satisfies the offense accountability for parole consideration purposes;

3.   order Defendants to reconsider the decisions rendered on Plaintiff's application for parole based on the existing record in a manner consistent with the D.C. Parole Board's 1987 Guidelines,

1991 Policy Guidelines, the other statutes, regulations, guidelines, policies, and practices of the Parole Board, federal regulations, the Constitution, and all other requirements of law;

    4.  award plaintiff attorney fees and litigation expenses; and

    5.  grant such other relief as the Court deems appropriate.

Dated: _1/29/08_____

                                    Respectfully submitted,

                                      Ricky Bryant #00113-000
                                      pro se

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing Complaint was sent by mail this_____day of February 2008, to the Clerk's Office U.S. District Court for the District of Columbia.

                              x _Ricky Bryant_
                                Ricky Bryant, pro se

                              "A. GIORDANI, PAROLE OFFICER"
                              AUTHORIZED BY ACT OF JULY 7, 1955
                              TO ADMINISTER OATHS
                              (9 U.S.C. 4004)

-2-

1.  Parties to this previous lawsuit

    Plaintiffs:_____

    _____

    Defendants:_____

    _____

2.  Court (if federal court, name the district; if state
    court, name the county):

    _____

3.  Docket Number:_____

4.  Name of judge to whom case was assigned _____

    _____

5.  Disposition (for example:  Was the case dismissed?
    Was it appealed?  Is it still pending?) _____

    _____

6.  Approximate date of filing lawsuit:_____

7.  Approximate date of disposition:_____

II. Place of Present Confinement: USP Lewisburg_____

    A.  Is there a prisoner grievance procedure in this
    institution? Yes _x_ No ____

    B.  Did you present the facts relating to your complaint
    in the state prisoner grievance procedure? Yes ___ No. x

    C.  If your answer is YES:

        1.  What steps did you take? _____

        _____

        2.  What was the result?___ _____

        _____

08 0315

**FILED**

FEB 2 5 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

-3-

D.  If your answer is NO, explain why not: <u>D.C. Parole</u>

decisions are non-appealable.

III. Parties

(In Item A below, place your name in the first blank and
place your present address in the second blank.  Do the
same for additional plaintiffs, if any).

A.  Name of plaintiff    <u>see attached complaint, page 2-3.</u>

Address

(In Item B below, place the full name of the defendant
in the first blank, his official position in the second
blank, and his place of employment in the third blank.
Use item C for the names, positions, and places of
employment of any additional defendants).

B.  Defendant <u>see attached complaint pgs. 2-3.</u> is

employed as                                          at

.

C.  Additional Defendants:

IV. Statement of Claim:

State here as briefly as possible the <u>facts</u> of your
case.  Describe how each defendant is <u>involved</u>.  Include
also the names of other persons involved, dates, and
places.  Do not give any legal arguments or cite any
cases or statutes.  If you intend to allege a number
of related claims, number and set forth each claim in a
separate paragraph.  (Use as much space as you need.
Attach extra sheet if necessary).

<u>see attached complaint, pgs. 1-17.</u>

-4-

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

V.  RELIEF

State Briefly exactly what you want the court to do for you.

Make no legal arguments.  Cite no cases or statutes.

   See attached complaint, pgs. 16 - 17.
_____

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

-5-

Signed this ___4___ day of ___Feb_____, 2008.

_____

X _Ricky Boyd_____
        Signature of plaintiff or
        plaintiffs

Executed at __Feb, 7, 2008_____
        (Name of institution, city, county)

I declare under penalty of perjury that the foregoing
is true and correct.

Executed on _____
                        (Date)

_____

_Ricky Boyd_____
Signature of plaintiff or
plaintiffs

**I (a) PLAINTIFFS**

*Ricky Bryant*

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** _____
**(EXCEPT IN U.S. PLAINTIFF CASES)**

*Pro se PR*

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
# 00113-000

**DEFENDANTS**

*Edward F. Reilly, Jr. et al*

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
**(IN U.S. PLAINTIFF CASES ONLY)**
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TR

A1  Case: 1:08-cv-00315
Assigned To : Huvelle, Ellen S.
Assign. Date : 2/25/2008
Description: Pro Se General Civil

**II. BASIS OF JURISDICTION**

(PLACE AN x IN ONE BOX ONLY)

□ 1 U.S. Government
Plaintiff

□ 3 Federal Question
(U.S. Government Not a Party)

⊗ 2 U.S. Government
Defendant

□ 4 Diversity
(Indicate Citizenship of Parties
in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | □ 1 | □ 1 | Incorporated or Principal Place of Business in This State | □ 4 | □ 4 |
| Citizen of Another State | □ 2 | □ 2 | Incorporated and Principal Place of Business in Another State | □ 5 | □ 5 |
| Citizen or Subject of a Foreign Country | □ 3 | □ 3 | Foreign Nation | □ 6 | □ 6 |

**IV. CASE ASSIGNMENT AND NATURE OF SUIT**

(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

| □ A. *Antitrust* | □ B. *Personal Injury/ Malpractice* | □ C. *Administrative Agency Review* | □ D. *Temporary Restraining Order/Preliminary Injunction* |
|---|---|---|---|
| □ 410 Antitrust | □ 310 Airplane<br>□ 315 Airplane Product Liability<br>□ 320 Assault, Libel & Slander<br>□ 330 Federal Employers Liability<br>□ 340 Marine<br>□ 345 Marine Product Liability<br>□ 350 Motor Vehicle<br>□ 355 Motor Vehicle Product Liability<br>□ 360 Other Personal Injury<br>□ 362 Medical Malpractice<br>□ 365 Product Liability<br>□ 368 Asbestos Product Liability | □ 151 Medicare Act<br><br>**Social Security:**<br>□ 861 HIA ((1395ff)<br>□ 862 Black Lung (923)<br>□ 863 DIWC/DIWW (405(g)<br>□ 864 SSID Title XVI<br>□ 865 RSI (405(g)<br><br>**Other Statutes**<br>□ 891 Agricultural Acts<br>□ 892 Economic Stabilization Act<br>□ 893 Environmental Matters<br>□ 894 Energy Allocation Act<br>□ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

□ E. *General Civil (Other)* OR ⊗ F. *Pro Se General Civil*

**Real Property**
□ 210 Land Condemnation
□ 220 Foreclosure
□ 230 Rent, Lease & Ejectment
□ 240 Torts to Land
□ 245 Tort Product Liability
□ 290 All Other Real Property

**Personal Property**
□ 370 Other Fraud
□ 371 Truth in Lending
□ 380 Other Personal Property Damage
□ 385 Property Damage Product Liability

**Bankruptcy**
□ 422 Appeal 28 USC 158
□ 423 Withdrawal 28 USC 157

**Immigration**
□ 462 Naturalization Application
□ 463 Habeas Corpus- Alien Detainee
□ 465 Other Immigration Actions

**Prisoner Petitions**
□ 535 Death Penalty
□ 540 Mandamus & Other
⊗ 550 Civil Rights
□ 555 Prison Condition

**Property Rights**
□ 820 Copyrights
□ 830 Patent
□ 840 Trademark

**Federal Tax Suits**
□ 870 Taxes (US plaintiff or defendant

□ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
□ 610 Agriculture
□ 620 Other Food &Drug
□ 625 Drug Related Seizure of Property 21 USC 881
□ 630 Liquor Laws
□ 640 RR & Truck
□ 650 Airline Regs
□ 660 Occupational Safety/Health
□ 690 Other

**Other Statutes**
□ 400 State Reapportionment
□ 430 Banks & Banking
□ 450 Commerce/ICC Rates/etc.

□ 460 Deportation
□ 470 Racketeer Influenced & Corrupt Organizations
□ 480 Consumer Credit
□ 490 Cable/Satellite TV
□ 810 Selective Service
□ 850 Securities/Commodities/ Exchange
□ 875 Customer Challenge 12 USC 3410
□ 900 Appeal of fee determination under equal access to Justice
□ 950 Constitutionality of State Statutes
□ 890 Other Statutory Actions (if not Administrative Agency Review or Privacy Act)

| ☐ G. *Habeas Corpus/ 2255* | ☐ H. *Employment Discrimination* | ☐ I. *FOIA/PRIVACY ACT* | ☐ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ☐ K. *Labor/ERISA (non-employment)* | ☐ L. *Other Civil Rights (non-employment)* | ☐ M. *Contract* | ☐ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

(●) 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ Multi district Litigation   ☐ 7Appeal to District Judge from Mag. Judge

---

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

*42 USC 1983*

---

**VII. REQUESTED IN COMPLAINT**   CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23   **DEMAND $**   Check YES only if demanded in complaint
**JURY DEMAND:** ☐ YES  (●) NO

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   ☐ YES (●) NO   If yes, please complete related case form.

**DATE** *2 25 08*   **SIGNATURE OF ATTORNEY OF RECORD** *NCO*

---

## INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
### Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

K:\forms\js-44.wpd

